UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DAVID BEUGLER )
and DIANA BEUGLER, )
 )
      Plaintiffs, )
v. )
 ) Case No. 03-CV-0626-CVE-FHM
UNION PACIFIC RAILROAD )
COMPANY, a corporation, )
and BURLINGTON NORTHERN & )
SANTA FE RAILWAY COMPANY, )
a corporation, )
 )
      Defendants. )

## OPINION AND ORDER

This matter comes before the Court on defendant Union Pacific Railroad Company's ("Union Pacific") Motion for Summary Judgment (Dkt. # 32), filed August 9, 2004.[1] A hearing was held on July 2, 2004, on co-defendant Burlington Northern & Santa Fe Railway Company's ("BNSF") motion for summary judgment, at which counsel for both defendants were present.[2] At that hearing, the Court ascertained that the factual record was still being developed. Accordingly, the Court directed the parties to focus discovery efforts on the motion for summary judgment, and gave the parties leave to file a new statement of facts within sixty days. The parties did so. Union Pacific filed its motion for summary judgment on August 9, 2004. On October 29, 2004, the Court held a

---

[1] The other defendant in this matter, BNSF, filed a motion for summary judgment on May 5, 2004 (Dkt. # 11). The Court granted BNSF's motion for summary judgment in the Order (Dkt. # 82) entered on December 9, 2004. An Amended Order (Dkt. # 88) was entered on February 3, 2005 to correct a factual statement in the Court's original Order. The Court notes that plaintiffs' claims against BNSF arose under common law negligence, rather than the Federal Employer's Liability Act.

[2] This case was originally assigned to Judge Sven Erik Holmes. It was transferred to the undersigned on March 16, 2005.

hearing to address both motions for summary judgment, and took defendant Union Pacific's motion under advisement. On December 7, 2004, plaintiffs filed a motion for leave to supplement the record (Dkt. # 81), which the Court granted in the Order (Dkt. # 84) entered on December 10, 2004.[3]

Based upon a careful review of the record, the Court finds that genuine issues of material fact exist which preclude summary judgment.

## I.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Ins. Corp., 805 F.2d 342, 345 (10th Cir.1986). In Celotex, the Supreme Court stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322.

Under Fed. R. Civ. P. 56(e), a party opposing a properly supported motion for summary judgment must offer evidence of specific facts, in admissible form, sufficient to raise a "genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

---

[3] The Court also directed the remaining parties to attend another settlement conference. The settlement conference was held on May 6, 2005, but the parties were unable to reach a settlement.

supported motion for summary judgment.") (emphasis in original). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. In Anderson, The Supreme Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

Id. at 252. Thus, to defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Anderson, 477 U.S. at 249-50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Boren v. Southwestern Bell Tel. Co., 933 F.2d 891, 892 (10th Cir.1991).

## II.

Plaintiffs have sued defendant Union Pacific under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. While the Court's inquiry remains "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law," Anderson, 477 U.S. at 251-52, a plaintiff bringing a case under FELA has a lesser burden of proof than a plaintiff bringing a claim under common law negligence. The Supreme Court has clearly set forth this distinction:

> Under [FELA] the test of a jury case is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought . . . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death . . . . Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury.

Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506-07, 510 (1957) (emphasis added). Thus, unless the Court determines that no reasonable jury could conclude that defendant Union Pacific's negligence played any role at all in plaintiff's injury,[4] the Court may not grant summary judgment in defendant's favor.

### III.

On December 9, 2002, while plaintiff was working as a conductor for Union Pacific, plaintiff's train left Parsons, Kansas, en route to Van Buren, Arkansas. Plaintiff's train was the third train in a parade of four Union Pacific Trains. In the early afternoon, plaintiff's train arrived at the interlocker in Vinita, Oklahoma.[5] Prior to arriving at the Vinita interlocker, plaintiff observed a yellow signal light, warning him that there would be a red signal light (indicating that the train must stop and get clearance before proceeding through the interlocker) when the train arrived at the interlocker. The two trains ahead of plaintiff's train went through the interlocker, after crew

---

[4]    When the Court refers to "plaintiff," in the singular, it is referring to Mr. Beugler.

[5]    The interlocker is the intersection between the UP main line and the BNSF main line.

members had checked to make sure is was safe to go through. Plaintiff overheard the second train's conversation with the Union Pacific dispatcher, who said that BNSF was working on some repairs around the interlocker.[6] Other than overhearing the second train's conversation, plaintiff testified that no one informed him that track maintenance was going to be performed at the interlocker that day.

After the first two trains went through the interlocker, plaintiff's train pulled up to the normal place to stop when a red light is observed at the interlocker. Plaintiff detrained and walked to the interlocker box. Upon arriving at the box, plaintiff saw that the BNSF employees had pulled out a broken section of rail on the Union Pacific main line track. The BNSF employees informed plaintiff that they were fixing a broken rail in the interlocker and that the repairs would take forty-five minutes to an hour to complete.[7] During plaintiff's conversation with the BNSF employees, a BNSF signal maintainer approached and stated that the crossing gates were down at the Main Street crossing in Vinita.[8] The crossing was on Union Pacific's track. The crossing gates normally go down when a piece of the rail is removed.

Edmund "Doc" Goforth ("Goforth") is the Union Pacific signal maintainer for the territory that encompasses the Vinita interlocker. Goforth testified that he had been present on occasions when repair work had caused the gates to drop at the Main Street crossing. He further testified that on those occasions he had taken steps to raise the gates while the work was being completed.

---

[6]   BNSF was responsible for maintaining the interlocker, pursuant to an agreement with Union Pacific.

[7]   The repairs were actually completed in approximately twenty minutes.

[8]   The street that passes through the crossing is actually Illinois Street, but the railroad employees who testified all refer to the crossing there as the "Main Street crossing." Accordingly, the Court will also refer to the crossing as the Main Street crossing.

Goforth testified that signal maintainers are trained in how to raise the gates properly when such a situation occurs, and that there is a specific procedure that must be followed in such a situation. Goforth also testified that a signal maintainer should be present when repair work is being performed so that there is a qualified person present to ensure traffic flow through the crossing while the repair work is being done. He testified that, in his opinion, there is no safety-related reason for the gates to be down while work is performed on the interlocker, although it is normal for the gates to go down when a piece of track is removed.

There is no evidence in the record that, on the day in question, either BNSF or Union Pacific notified a signal maintainer from Union Pacific about the maintenance work and its effect on the crossing gates. Union Pacific dispatchers testified that they would not normally notify a Union Pacific signalman that another railroad was doing work on Union Pacific's track. While a BNSF signalman was present on the day in question, he was unable to bypass the mechanism that caused the gates to go down. His inability to do so was apparently due to the fact that the gates were part of Union Pacific's track system, which operated differently than BNSF's system.

Plaintiff testified that, after learning that the BNSF employee was unable to electronically bypass the gate mechanism, plaintiff was concerned that having the crossing gates down for a prolonged period would obstruct traffic unnecessarily. Plaintiff further testified that he was also concerned that such a situation would erode public confidence in his employer, Union Pacific. The evidence in the record indicates that maintaining public confidence in the crossing signals was a priority for Union Pacific, and that this was often communicated to Union Pacific employees. Numerous employees testified that if the public sees that crossing gates are down but no train is approaching, the public may begin to disregard the signals. Employees also testified that they had

heard "rumors" of trainmen receiving citations from police when their trains blocked crossings unnecessarily.

Based on his concerns, plaintiff decided to go to the Main Street crossing and manually lift the gates to allow traffic to go through. The crossing gates are light, and plaintiff was able to lift the gate with one hand and hold the gate over his head, leaving his other hand free to waive traffic through the crossing. Plaintiff first lifted the gate to allow westbound traffic to pass through, then eastbound traffic. As he was again lifting the gates to allow westbound traffic to pass through, a police officer approached and asked if there was anything he could do to help. At plaintiff's request, the officer held up the gate for eastbound traffic, while plaintiff continued to hold up the gate for westbound traffic. As plaintiff has holding up the gate for westbound traffic, he heard a truck honk.[9] Plaintiff jerked his head around when he heard the noise. Plaintiff claims that the jerking of his head while he was holding up the gate caused the injury which is the subject of this suit.

Following plaintiff's injury, plaintiff met with his supervisor, Richard Doyle. Plaintiff mentioned that he had a tingling sensation in his arm and shoulder, but decided to wait until the next day to see if the sensation had subsided before filling out an injury report. At the meeting, Doyle discussed his concern that plaintiff may have violated Union Pacific safety rules, specifically rules

---

[9] In his deposition, plaintiff testified that he believed the driver of the truck sounded his horn to get plaintiff's attention because he wanted to ensure that his truck could clear the gate.

1.23 and 70.8, in manually lifting the crossing gates.[10] Doyle testified that plaintiff seemed surprised to learn that his actions may have violated safety regulations.

Gary Scott, Union Pacific's Manager of Train Operations, also testified that plaintiff's actions in lifting the crossing gate violated Union Pacific safety rules. Scott testified that only employees who are governed by the Chief Engineer's Instruction Bulletins are allowed to lift crossing gates, and that plaintiff was not such an employee.[11] Several employees in management or in the signal department testified that only signal department employees were authorized to interfere with crossing gates. However, several also testified that they may have heard of employees from other departments lifting the gates in certain circumstances.

Moreover, plaintiff testified that he was not aware of a rule prohibiting lifting crossing gates manually. In fact, plaintiff testified that the conductors who trained him in his early days with the railroad taught him how to lift the crossing gates.[12] Plaintiff estimated that he had lifted the gates

---

[10]  Rule 1.23 provides as follows:
**Altering Equipment**
Without proper authority, employees must not alter, nullify, change the design of, or in any manner restrict or interfere with the normal function of any device or equipment on engines, cars, or other railroad property, except in the case of an emergency. Employees must report to the proper supervisor changes made in an emergency.
(Def.'s Mot. for Summ. J., Ex. F at 2.)

Rule 70.8 provides as follows:
**Motioning Vehicles at Grade Crossings**:
Do not motion vehicles to proceed over grade crossings, except as provided in Chief Engineer's Instruction Bulletins and as per Rule 74.12, Railroad Crossing.
(Def.'s Mot. for Summ. J., Ex. F at 3.)

[11]  Scott testified that "the signal department would be the only one that would be allowed to lift gates or do anything with gates." (Dep. of Gary Scott at 26, Dkt. # 61, Ex. 6).

[12]  Plaintiff originally worked for the KATY railroad, which merged with Union Pacific about ten years after plaintiff began working for the railroad.

over one hundred times throughout his career. However, plaintiff also testified that he could not recall specifically an instance where he had lifted the gates within the past twenty-four years.

Shortly after the incident at the Main Street crossing, plaintiff's employment was terminated. The stated reason for plaintiff's termination was his violation of Rule 1.6 of the Union Pacific General Code of Operation Rules. Rule 1.6 provides:

> Employees must not be:
> 1. Careless of the safety of themselves or others.
> 2. Negligent.
> 3. Insubordinate.
> 4. Dishonest.
> 5. Immoral.
> 6. Quarrelsome.
>    or
> 7. Discourteous.

(Pls.' Resp. to Def.'s Mot. for Summ. J., Ex. 7 at 2.) Union Pacific representatives testified that plaintiff's employment was terminated because he violated Union Pacific safety regulations when he manually lifted the gates. However, on November 17, 2004, a Public Law Board overturned the decision to discharge plaintiff, and gave plaintiff the opportunity to resume his employment with Union Pacific.

**IV.**

Plaintiffs (plaintiff and his wife) claim that Union Pacific was negligent, and therefore liable under FELA, in (1) failing to notify its train crews of BNSF's intent to do rail work at the interlocker; (2) failing to instruct their crews properly of the precautions that need to be taken when approaching the interlocker to avoid interfering with vehicular traffic on the adjoining roadway; (3) failing to communicate with BNSF so as to be fully apprised of the work being performed at the interlocker; (4) failing to have sufficient manpower available to cope with the traffic problems

created at the crossing due to the work on the interlocker; and (5) failing to provide adequate instruction to plaintiff and his co-worker regarding how to handle traffic congestion at the crossing due to BNSF's work.

Defendant Union Pacific argues that the claims against it fail as a matter of law because plaintiff has not presented evidence that Union Pacific caused his injury, and because the violation of Union Pacific's safety rules was the sole cause of plaintiff's injuries.

Plaintiffs counter that summary judgment is not appropriate in this case, especially under FELA, because genuine issues of material fact remain regarding the foreseeability of plaintiff's actions in lifting the crossing gates and Union Pacific's negligence in creating the situation in which plaintiff's injury occurred. Specifically, plaintiff argues that his actions were foreseeable because he had been trained to manually lift crossing gates in his early days with the KATY railroad, because Union Pacific often emphasized to its employees that crossing gates must never be left down unnecessarily, and because he had personally lifted crossing gates many times throughout his career. Moreover, although he denies violating Union Pacific safety rules, plaintiff argues that even if there were a rule against manually lifting the gates, plaintiff was not aware of it. Plaintiff also argues that Union Pacific violated federal regulations by not taking appropriate action to ensure that the gates were lifted while BNSF was working on the Union Pacific track.

Based on the evidence before the Court, the Court finds that genuine issues of material fact exist regarding both the foreseeability of plaintiff's actions in lifting the crossing gates, and defendant's potential negligence in not ensuring that a signal maintainer was present while work was being done on Union Pacific's track. Therefore, the Court finds that it is not possible to determine, as a matter of law, "that employer negligence [did not play] any part, even the slightest, in producing

the injury . . . for which damages are sought" and that therefore plaintiff is not entitled to any recovery under FELA. Rogers, 352 U.S. 506-07.

## V.

For the foregoing reasons, defendant Union Pacific's Motion for Summary Judgment (Dkt. # 32) is hereby **denied**.

**IT IS SO ORDERED** this 6th day of June, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT